## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOYCE JONAS,

       Plaintiff,

vs.                                                        No. CIV 09-0091 JB/WPL

BOARD OF COMMISSIONERS OF LUNA COUNTY,
LUNA COUNTY SHERIFF'S OFFICE,
DEPUTY SHERIFF DONNIE DANIELS,
and DEPUTY SHERIFF DON HOOLAN,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the County Defendants' Motion in Limine No. I: the Exclusion of Evidence at Trial Regarding Defendant Deputies' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training and Less Intrusive Alternatives, filed February 25, 2010 (Doc. 55). The Court held a hearing on March 5, 2010. The primary issue is whether the Court should exclude, pre-trial, all policies found in the Manual of Operating Procedures for the Luna County Sheriff's Department. Plaintiff Joyce Jonas largely consented to the granting of this motion. With respect to the remaining issue, because the Court finds that the United States Court of Appeals for the Tenth Circuit has created a high burden to prove admissibility of standard operating procedures, and Jonas has failed to meet that burden, the Court will grant the Defendants' motion in limine.

## FACTUAL BACKGROUND

Jonas would like to present as evidence portions of a Manual of Operating Procedures written by Sheriff Raymond Cobos for the Luna County Sheriff's Department. The provisions she

seeks to proffer that are relevant to this motion are these:

**MISSION STATEMENT**

It is the mission of the Luna County Sheriff's Department to provide the highest quality law enforcement protection to all citizens of Luna County and their property and the promotion of the health and well-being of the Luna County community through coordination with all other like-minded citizen groups and governmental agencies.

* * * *

N.     It is a Deputy's duty to see that the laws are enforced and that peace and order are maintained.

O.     Patrol Deputies shall know and understand the extent and limits of their authority, including the use of necessary and deadly force.  They shall know what their jurisdiction is and know the jurisdiction and role of other law enforcement agencies, prosecutors and the court systems.  Such officers are expected to be familiar with proper patrol procedures and safe vehicle operations.  They shall know, understand, and use correct radio procedures.

P.     Patrol Deputies shall be familiar with criminal law, rules of evidence and criminal court procedures[.]  They shall be able to conduct preliminary criminal investigations which include protecting the scene of a crime, preservation of evidence, chain of custody, initial interviews and report writing.

* * * *

R.     Patrol Deputies shall be familiar with and able to prepare criminal complaints, field contact notes, daily logs, arrest reports, offense-incident reports, accident reports, disposition reports and all other reports required by the Department in the performance of their duties.

* * * *

8.     KNOWLEDGE OF LAWS AND REGULATIONS
        Every member shall establish and maintain a working knowledge of all laws and ordinances in force in the County.  All members shall be required to maintain a working knowledge . . . .

* * * *

10.   <u>OBEDIENCE TO LAWS AND REGULATIONS</u>
Members shall observe and obey all laws, ordinances and all rules and
regulations of the Sheriff's Department as well as the unit to which
assigned.

R. Cobos, <u>Manual of Operation Procedures: Luna County Sheriff's Department</u> (Jan. 2006).

## PROCEDURAL BACKGROUND

On January 28, 2009, Jonas filed a complaint against the Board of Commissioners of Luna
County, the Luna County Sheriff's Office, and two Luna County Sheriff's Office deputies, based
on alleged actions by Defendants Donnie Daniels and Don Hoolan -- the two named deputies.   The
Complaint asserted the following claims: (i) unlawful seizure in violation of the Fourth Amendment
of the Constitution of the United States; (ii) use of excessive force in violation of the Fourth
Amendment; (iii) false imprisonment in violation of the Fourteenth Amendment; (iv) violation of
the Fifth Amendment; (v) negligent supervision and training; (vi) violation of Jonas' liberty interests
and right to substantive due process; (vii) malicious abuse of process; and (viii) violations of the
New Mexico Tort Claims Act.   <u>See</u> Complaint for Damages From Violations of Civil and
Constitutional Rights, the New Mexico Tort Claims Act, and New Mexico Common Law, filed
January 28, 2009 (Doc. 1).  Since that time, several of the claims have dropped out, but the claims
about which this motion seems most relevant -- unlawful seizure and excessive force -- are still a
part of the case.  <u>See</u> Unopposed Motion for Order Dismissing Certain Claims, filed February 22,
2010 (Doc. 49); Stipulated Order Dismissing Certain Claims, filed February 26, 2010 (Doc. 59);
Unopposed Motion for Order Dismissing Certain Claim, filed March 3, 2010 (Doc. 64).

The Defendants filed this motion on February 25, 2010.  Jonas did not file a response.  At
the hearing, Michael Mozes, Jonas' counsel, consented to the Court granting the motion in large

part.  <u>See</u> Transcript of Hearing at 8:18-9:21 (taken March 5, 2010)("Tr.")(Mozes).[1]  The only

evidence to which Jonas opposes the motion are passages from the Manual of Operating Procedures

for the Luna County Sheriff's Department.  Mr. Mozes argued that, because those passages do not

set forth policies or procedures relating to the use of force, the general prohibition on introducing

standard operating procedures ("SOPs") into evidence did not apply.  <u>See</u> Tr. at 12:23-13:9 (Mozes).

Ms. Anderson disagreed, arguing that the prohibition on SOP evidence applied equally to all SOPs.

<u>See</u> Tr. at 10:3-12:16 (Court, Anderson).  She stated that the Defendants would not agree to

admission of the provisions that Mr. Mozes provided, but stated that she believed that Jonas would

be able to get substantially the same evidence in the form of testimony from Daniels and Hoolan.

<u>See</u> Tr. at 10:13-17 (Anderson)("[W]e do not want to agree to putting these in. I think Mr. Mozes

can get this testimony into evidence in trial by just ask the deputy sheriffs on witness stand, 'as an

officer, isn't it your duty to uphold the laws of the state of New Mexico?' That kind of thing . . . .").

The Court agreed to research the issue whether the SOPs unrelated to excessive use of force should

also be excluded as evidence in a civil-rights action such as this one.

### RULE 404 OF THE FEDERAL RULES OF EVIDENCE AND PRIOR USE OF FORCE

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not

admissible for the purpose of proving that he acted in conformity therewith on a particular

occasion." Fed. R. Evid. 404(a).  "This rule is necessary because of the high degree of prejudice that

inheres in character evidence.  In most instances, [the Tenth Circuit is] unwilling to permit a jury

to infer that an individual performed the alleged acts based on a particular character trait." <u>Perrin</u>

<u>v. Anderson</u>, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule 404 advisory notes).

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Moreover, rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).  To admit other crimes, wrongs, or acts under rule 404(b), the proponent must provide a clear and logical connection between the alleged earlier offense or misconduct, and the case being tried.  See United States v. Hogue, 827 F.2d 660, 662 (10th Cir. 1987)(discussing the inadmissibility of evidence of prior or subsequent bad acts to show action in conformity therewith). A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered.  See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce 404(b) evidence.  See Chavez v. City of Albuquerque, 402 F.3d 1039, 1046 (10th Cir. 2005)(holding that plaintiff failed to satisfy the first factor -- that evidence of prior use of force was introduced for a proper purpose); Tanberg v. Sholtis, 401 F.3d 1151, 1167-68 (10th Cir. 2005)(holding that plaintiffs failed to satisfy the second factor -- that evidence of past use of force was relevant).  In Chavez v. City of Albuquerque, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehockey, a K-9 officer, to use his police service dog in cases which were unrelated to the plaintiff's claim.  See 402 F.3d at 1046.  The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart."  Id. at 1046.  The

plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under rule 404(b).  See 403 F.3d at 1046.  Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained that:

> Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K-9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented.  There was no claim or defense suggesting that [the K-9 officer] accidentally or mistakenly used the police dog.  Indeed, it seems clear that he made a deliberate, conscious decision to do so.  Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.

Id. (citations omitted).  The Tenth Circuit also noted that the district court's conclusion "that such evidence was not relevant under the objective reasonableness standard of Graham v. Connor[, 490 U.S. 386 (1989)] . . . is consistent with the decisions of several other federal appellate courts which have considered similar requests."  402 F.3d at 1047 n. 4.

In Tanberg v. Sholtis, the plaintiffs sought to admit evidence that the defendant officer used excessive force or illegally seized suspects in three unrelated cases.  See 401 F.3d at 1167.  The plaintiffs contended that evidence of the officer's other acts of misconduct was "relevant under Fed. R. Evid. 404(b) to show intent and absence of mistake as well as 'consciousness and state of mind.'" See 401 F.2d at 1164.  The Tenth Circuit stated:  "Because [p]laintiffs' federal claim for excessive force requires assessment of [the officer's] conduct under an objective standard, [p]laintiffs have failed to establish the relevance of evidence tending to shed light on aspects of [the officer's] mental state to this claim."  401 F.3d at 1167-68 (citing Graham v. Connor, 490 U.S. at 397).

In Kampa v. City of Albuquerque, No. CIV 96-1572 LFG/DJS (D.N.M.), the Honorable

Lorenzo Garcia, United States Magistrate Judge, explained the problem created by allowing the introduction of unrelated use of force incidents – other police shootings – into evidence:

> The danger relating to the introduction of this evidence is apparent. A fact finder may inappropriately conclude that a person is culpable, not because he committed the act in question, but rather, because he is a bad person, or because at some other time, he committed some other bad act. Clearly, the Supreme Court and the Tenth Circuit's focus on objective reasonableness requires the fact finder to look at the conduct in question and, based on that, determine whether a violation of the [decedent's] constitutional rights occurred.

Kampa v. City of Albuquerque, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at 4 (D.N.M., filed March 9, 1998)(Doc. 138).

Like the Tenth Circuit, a number of circuit courts agree that a police officer's use of force in a factually unrelated incident is improper rule 404(b) evidence. See Treece v. Hochstetler, 213 F.3d 360, 363-64 (7th Cir. 2000)(holding that, in a § 1983 suit alleging a police officer demanded a bribe in exchange for dropping charges against the plaintiff's husband, the officer's prior "bad acts" were insufficient to show modus operandi), cert. denied, 531 U.S. 957 (2000); Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993)(holding that, in a § 1983 excessive-force case, the district court erred in allowing the defendant police officer to testify that, in his sixteen-and-one-half years as a police officer, he never shot anyone); Hopson v. Frederickson, 961 F.2d 1374, 1379 (8th Cir. 1992) ("[S]howing a proclivity to engage in conduct is the same as showing a propensity to engage in conduct and both are prohibited by [Rule 404(b)]."); Morgan v. City of Marmaduke, Arkansas, 958 F.2d 207, 211 (8th Cir. 1992)(noting that "issues of motive and intent are essentially irrelevant in an excessive force case as the test is an objective one"); Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991)(stating that prior complaints against police offered to show an aggravated state of mind was improper character evidence); Jones v. Hamelman, 869 F.2d 1023, 1027 (7th Cir. 1989)(holding that the district court properly excluded testimony of inmate regarding the callous

indifference by prison official toward the protection of inmates because, among other reasons, it did not fit within a rule 404(b) exception); Hirst v. Gertzen, 676 F.2d 1252, 1262 (9th Cir. 1982)(finding that a deputy's prior violent and brutal acts constituted inadmissible character evidence).  See also Eigeman v. City of Great Falls, 723 F. Supp. 522, 525 (D. Mont. 1989)(finding that a new trial was not warranted on basis of newly discovered evidence that police officer was involved in a subsequent unrelated incident because such evidence "would serve to take the focus of the jury away from the question of what actually happened at the time of that confrontation, and direct it to the character of the defendant . . . .  This is precisely what Fed. R. Evid. 404 is designed to prohibit.").

## RULE 403 OF THE FEDERAL RULES OF EVIDENCE

Rule 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  Unfair prejudice in the rule 403 context "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.  "The burden under Rule 403 is on the party opposing admission, who must show that the probative value is substantially outweighed by the danger of unfair prejudice." United States v, Delgado, No. CR 05-920, 2006 U.S. Dist. LEXIS 29150, at *9 (D.N.M. Feb. 10, 2006)(Browning, J.)(quoting United States v. Tse, 375 F.3d 148, 164 (1st Cir. 2004).  See McEwen v. City of Norman, 926 F.2d 1539, 1549-50 (10th Cir. 1991)(stating that unfair prejudice "cannot be equated with testimony which is simply unfavorable to a party.  It must be unfair in the sense that it would be misleading and not aid and assist the jury in making a material determination in the case.").

**EVIDENCE IN FOURTH-AMENDMENT EXCESSIVE-FORCE CLAIMS**

The federal courts have developed an extensive body of law regarding the use of excessive force.  Concomitantly, the federal courts have discussed at length the evidence that can come in such cases.  For the most part, the federal courts have been restrictive in what evidence plaintiffs can offer against police officers.

In Graham v. Connor, the Supreme Court of the United States held that all claims under 42 U.S.C. § 1983 in which a law-enforcement officer has allegedly used excessive force in the course of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard.  490 U.S. at 388.  To determine the reasonableness of an officer's use of force, the Supreme Court in Graham v. Connor stated that the proper application of the "objective reasonableness test" to a use-of-force case

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97 (citations omitted).

The United States District Court for the District of New Mexico has on multiple occasions applied the Graham v. Connor "objective reasonableness" standard and excluded evidence regarding a police officer's use of force in unrelated incidents.  See Chamberlin v. City of Albuquerque, No. CIV 02-0603 JB/ACT, 2005 WL 2313527, at **1-2 (D.N.M. July 31, 2005)(Browning, J.); Realivasquez v. City of Albuquerque, No. CIV 03-0015 MCA/KBM, Memorandum Opinion and Order at 8-11 (D.N.M., filed March 8, 2004)(Doc. 73); Tanberg v. Sholtis, No. CIV 02-0348

LCS/LFG, Order on Motions in Limine at 5; Marquez v. Scott, No. CIV 01-0445 WWD/LFG, Memorandum Opinion and Order at 1-2 (D.N.M., filed September 24, 2002)(Doc. 149); Kampa v. City of Albuquerque, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at 4 (Doc. 138); Smith v. Stover, No. CIV 95-1471 JP/WWD, Memorandum Opinion and Order at 2 (D.N.M., filed December 9, 1997)(Doc. 127).

In Chamberlain v. City of Albuquerque, Luis Robles, the attorney for the police officer, filed Defendant's Motion in Limine No. II: the Exclusion of Evidence at Trial Regarding the Officers' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training, and Less Intrusive Alternatives. See 2005 WL 2313527, at *1. At trial, the plaintiff alleged that the police officer's use of force against him was unreasonable, violating his Fourth-Amendment rights. Through formal and informal discovery, the plaintiff had, or may have had, obtained information regarding the use of force by certain officers in prior and subsequent, unrelated incidents, Internal Affairs complaints, civil-rights lawsuits filed against the officer, and the settlement of certain civil-rights lawsuits brought against the officers. The police officer moved, pursuant to rule 104(c), asking the Court not to admit certain evidence against him to support the plaintiff's claim against him in his individual capacity. The plaintiff sought to introduce the jury verdict rendered against the police officer in two cases to demonstrate maliciousness in support of the plaintiff's punitive damages claim, to show that the plaintiff did not act in good faith, and for credibility determination purposes. The plaintiff did not argue that the police officer's bad acts were relevant to establishing that he violated the "objective reasonableness" standard in Graham v. Connor. Chamberlin v. City of Albuquerque, 2005 WL 2313527, at *1. The Court precluded the plaintiff from introducing evidence or testimony about two prior jury verdicts against the police officer, and the Court would also not allow any evidence pertaining to internal affairs complaints

or to other civil rights lawsuits and their settlements.  See 2005 WL 2313527, at *2.  Specifically,

the Court did not admit evidence of the officer's use of force in prior and subsequent, unrelated

incidents, and civil-lawsuit settlements.  See id.

### EVIDENCE OF LEAST- OR LESS-FORCEFUL ALTERNATIVES IN EXCESSIVE-FORCE CASES

To avoid a "Monday morning quarterback" approach, the Fourth Amendment does not

require the use of the least-, or even a less-, forceful or intrusive alternative to effect custody, so long

as the use of force is reasonable under Graham v. Connor.  The Fourth Amendment requires only

that the defendant officers choose in a "reasonable" method to end the threat that the plaintiff posed

to the officers and a force situation, regardless of the availability of less intrusive alternatives.

In Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 450-51 (1990), the Supreme Court

examined a case reviewing the constitutionality of highway sobriety checkpoints, and stated that

Brown v. Texas, 443 U.S. 47 (1979),

> was not meant to transfer from politically accountable officials to the courts the
> decision as to which among reasonable alternative law enforcement techniques
> should be employed to deal with a serious public danger.  Experts in police science
> might disagree over which of several methods of apprehending drunken drivers is
> preferable as an ideal.  But for purposes of Fourth Amendment analysis, the choice
> among such reasonable alternatives remains with government officials who have a
> unique understanding of, and a responsibility for, limited public resources, including
> a finite number of police officers.

496 U.S. at 453-54.  See Illinois v. Lafayette, 462 U.S. 640, 647 (1983)("[T]he reasonableness of

any particular government activity does not necessarily turn on the existence of alternative 'less

intrusive' means.").  To avoid unrealistic second guessing, the Fourth Amendment does not require

that an officer use the least-intrusive alternative available to protect himself or others so long as the

method chosen is reasonable.

In <u>United States v. Sokolow</u>, 490 U.S. 1 (1989), the Supreme Court examined the <u>Terry</u>[2] stop of a suspected drug courier in an airport.  The Supreme Court rejected Sokolow's contention that the arresting officers were "obligated to use the least intrusive means available to dispel their suspicions  that he was smuggling narcotics."  490 U.S. at 11.  Instead, the Supreme Court held: "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques.  Such a rule would unduly hamper the police's ability to make swift, on-the-spot decision . . . and require courts to indulge in unrealistic second guessing." <u>Id.</u> at 11 (internal quotations and citations omitted).  In <u>United States v. Sharpe</u>, 470 U.S. 675, 686-87 (1985), the Supreme Court stated that

> a creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of police might have been accomplished.  But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, by itself, render the search unreasonable."

470 U.S. at 686-87 (quoting <u>Cady v. Dombrowski</u>, 413 U.S. 433, 447 (1973)).

In <u>United States v. Marquez</u>, 399 F.3d 1216 (10th Cir. 2005), the Tenth Circuit disagreed with the plaintiff's contention that expert testimony about when a police dog's use is objectively reasonable and about how defendant Lehocky's actions violated "well established law enforcement standards . . . should have been admitted since it would have been helpful to the jury in determining whether Lehocky's used a reasonable amount of force."  399 F.3d at 1222.  In so holding, the Tenth Circuit explained:

> As the district court correctly noted, the Fourth Amendment "do[es] not require [police] to use the least intrusive means in the course of a detention, only reasonable ones."  <u>United States v. Melendez-Garcia</u>, 28 F.3d 1046, 1052 (10th Cir. 1994).  Similarly, "violations of state law and police procedure generally do not give rise to

---

[2] <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

a 1983 claim" for excessive force.  Romero v. Bd. of County Comm'rs, 60 F.3d 702, 705 (10th Cir. 1995); see also Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995)(holding that "violation of a police department regulation is insufficient for liability under section 1983" for excessive force).  Both of these principles of our Fourth Amendment jurisprudence stem from the proper perspective from which to evaluate the conduct of a police officer -- that "of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." Olsen [v. Layton Hills Mall], 312 F.3d [1304,] 1314 [(10th Cir. 2002)].  Together, they prevent the courts from engaging in "unrealistic second guessing of police officer's decisions."  [United States v.] Melendez-Garcia, 28 F.3d at 1052.

Here, the only issue before the jury was whether Lehocky acted as a "reasonable officer" when he ordered his police dog to apprehend Marquez.  In making this determination, the issues of whether Lehocky used the minimum amount of force to apprehend Marquez and whether Lehocky violated some "well established police procedure" are only tangentially related.  This is because even if it found Lehocky used more than the minimum amount of force necessary and violated police procedure, the jury could nonetheless find he acted reasonably. [United States v.] Melendez-Garcia, 28 F.3d at 1052; Romero [v. Bd. of County Comm'rs, 60 F.3d at 705].

United States v. Marquez, 399 F.3d at 1222.

In United States v. Melendez-Garcia, 28 F.3d 1046 (10th Cir. 1994), the Tenth Circuit stated: "We must avoid unrealistic second guessing of police officers decisions in this regard and thus do not require them to use the least intrusive means in the course of a detention, only a reasonable ones."  Id. at 1052 (internal quotations omitted).  The Tenth Circuit explained that the Fourth Amendment "do[es] not require [police officers] to use the least intrusive means in the course of a detention, only reasonable ones."  United States v. Melendez-Garcia, 28 F.3d at 1052.  See Medina v. Cram, 252 F.3d at 1133 (stating that "the reasonableness standard does not require that officers use alternative less intrusive means.")(quotation and citation omitted); Dickerson v. McClellan, 101 F.3d 1151, 1160 (6th Cir. 1996)("[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances."); Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994)("We do not believe the Fourth Amendment requires the

-13-

use of the least or even a less deadly alternative so long as the use of force is reasonable under Tennessee v. Garner and Graham v. Connor."), cert. denied, 513 U.S. 820 (1994); Schultz v. Long, 44 F.3d 643, 649 (8th Cir. 1995)("[T]he Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within the range of conduct which is objectively 'reasonable' under the Fourth Amendment."); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. . . . Officers thus need not avail themselves of the least intrusive means of responding to an exigent situations; they need only act within that range of conduct we identify as reasonable."), cert. denied, 515 U.S. 1159 (1994); Menuel v. City of Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994)("[T]he Fourth Amendment does not require officers to use the least intrusive alternatives in search and seizure cases.  The only test is whether what the police officers actually did was reasonable.").  In V-1 Oil, Co. v. Means, 94 F.3d 1420 (10th Cir. 1996), the Tenth Circuit stated:  "Police are not required to use the least intrusive means in the course of a stop, only reasonable means."  Id. at 1427.  See Diaz v. Salazar, 924 F. Supp. 1088, 1100 (D.N.M. 1996) (Hansen, J.)("I agree with Defendant City that police are not constitutionally required to carry certain weapons, such as mace, nor are they constitutionally required to respond to a suspect's threat of force with non-force or the least intrusive amount of force.").

Thus, the clearly established law in the Tenth Circuit holds that the Fourth Amendment does not require an officer to use the least or a less forceful alternative.  See, e.g., Blossom v. Yarbrough, 429 F.3d 963, 968 (10th Cir. 2005)(quoting Medina v. Cram, 252 F.3d at 1133)("It is well settled that 'the reasonableness standard does not require that officers use alternative, less intrusive means' when confronted with a threat of serious bodily injury."); Jiron v. City of Lakewood, 392 F.3d 410,

414 (10th Cir. 2004)(stating that, in police-shooting case, officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable).  See also Roy v. Inhabitants of the City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994)("[I]n close cases, a jury does not automatically get to second guess these life and death decisions, even though plaintiff has an expert and a plausible claim that the situation could better have been handled differently."); Diaz v. Salazar, 924 F. Supp. at 1100.

This rule, that the Fourth Amendment does not require an officer to use less forceful alternatives, has consequences on the evidence that the trial court may admit.  So long as the force used by the officer is reasonable, the clearly established Fourth-Amendment case law rejects the consideration of a less intrusive alternative to end the immediate  threat to him or herself, his or her fellow officers, or members of the public, that the plaintiff posed.  In Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the Tenth Circuit pointed out:

> The only issue before the jury was whether [the defendant officer] acted as a "reasonable officer" when he [used force against a suspect].  In making this determination, the issues of whether [the defendant officer] used the minimum amount of force to apprehend [the suspect] and whether [the defendant officer] violated some "well established police procedure" are only tangentially related. This is because even if it found [the defendant officer] used more then than the minimum amount of force necessary and violated police procedure, the jury could nonetheless find he acted reasonably.

Id. at 1221 (citation and footnote omitted).    In Medina v. Cram, the Tenth Circuit rejected the consideration of a less intrusive alternative to end a threat:

> Moreover, the reasonableness standard does not require that officers use "alternative 'less intrusive' means."  Illinois v. Lafayette, 462 U.S. 640, 647-48 . . . (1983).  If we were to follow the dissent's approach and consider the expert's assertions regarding the failure to use pepper spray and other tactical measures, we would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-second judgments on the scene.

Medina v. Cram, 252 F.3d at 1133.  This District has also rejected the consideration of a less

intrusive alternative to end a threat.  See Chamberlain v. City of Albuquerque, 2005 WL 2313527, at *2 (Browning, J.)(precluding the plaintiff's police procedures expert from testifying at trial regarding alternative less intrusive means); Taylor v. Hudson, No. CIV 02-0775, 2003 U.S. Dist. LEXIS 26736, at *18 (D.N.M. Nov. 25, 2006)(Browning, J.)(excluding any SOP evidence related to less intrusive alternatives to the amount of force used against plaintiff); Tanberg v. Sholtis, No. CIV 02-0348 LCS/LFG, Memorandum Opinion and Order at 7-8 (finding that evidence as to the use of less intrusive alternatives to the use of force is not relevant to the plaintiffs' constitutional claims against the officer).

In Taylor v. Hudson, the Court stated:  "[E]vidence of less intrusive alternatives is irrelevant to the Fourth Amendment reasonableness inquiry and thus inadmissibility."  2003 U.S. Dist. LEXIS 26736, at *18.   In Chamberlain v. City of Albuquerque, the Court, relying on Marquez v. City of Albuquerque and United States v. Melendez-Garcia, excluded any evidence of SOPs regarding lesser intrusive alternative methods of force.  See 2005 U.S. Dist. LEXIS 21910, at *2.

## NEW MEXICO LAW ON THE TORT OF BATTERY

In Fuerschbach v. Southwest Airlines Co., 439 F.3d 1197 (10th Cir. 2006), the Tenth Circuit stated:

> Because New Mexico has not adopted a specific civil jury instruction for assault and battery, the officers urge us to apply the elements of criminal battery, which include touching "when done in a rude, insolent or angry manner."  N.M. Stat. Ann. § 30-3-4.  It would be incorrect to do so.  In disposing of an appeal in a criminal battery case, the New Mexico Court of Appeals relied upon the elements of civil battery discussed in the Restatement (Second) of Torts.  [State v.]Ortega, [113 N.M. 437, 440,] 827 P.2d [152] at 155 [(Ct. App. 1992)].  Because the court explicitly applied the elements of civil battery in a criminal case, we have little trouble applying those same principles in a civil case.

439 F.3d at 1209 n. 10.  See Murphy v. Bitsoih, 320 F. Supp. 2d 1174, 1202 (D.N.M. 2004)(quoting State v. Ortega, 113 N.M. at 440, 827 P.2d at 155 (quoting Restatement (Second) of Torts § 18

(1965))("An actor is subject to civil liability for battery if 'he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . an offensive contact with the person of the other directly or indirectly results.'").

"An officer in making an arrest is privileged by statute to use only that force which is necessary to restrain the arrested person." State v. Kraul, 90 N.M. 314, 318, 563 P.2d 108, 112 (Ct. App.), cert. denied, 567 P.2d 486 (1977). "Police officers are not liable for battery if they acted in good faith and did not use more force than reasonably necessary to preserve the peace or effect an arrest." Realivasquez v. City of Albuquerque, No. CIV 03-0015 MCA/KBM, Memorandum Opinion and Order at 9 (citing State v. Gonzalez, 97 N.M. 607, 610, 642 P.2d 210, 213 (Ct. App. 1982)). See Alaniz v. Funk, 69 N.M. 164, 168, 364 P.2d 1033, 1035-36 (1961)(applying, in force case brought against a police officer, an objective reasonableness test that is similar to the test in Graham v. Connor); Mead v. O'Connor, 66 N.M. 170, 173, 344 P.2d 478, 481 (1959)(applying, in battery case brought against a police officer, an objective reasonableness test that is similar to the test found in Graham v. Connor).

In Tanberg v. Sholtis, the plaintiffs asserted that the officer's prior incidents were also relevant to their state-tort battery and assault claims. See 401 F.3d at 1167. Construing New Mexico tort law, the Tenth Circuit in Tanberg v. Sholtis stated:

> [E]vidence of prior acts has no bearing on [the officer's] specific intent necessary for assault and battery. As the trial court correctly pointed out, the intent required by state tort law is not a malicious intent to cause harm, but rather the intent to perform the actions, combined with the belief that certain consequences are "substantially certain to result." [The officer] does not dispute that he intended the consequences of his actions in using force to apprehend [p]laintiffs, and highly prejudicial evidence offered to prove a point not in dispute is properly excluded under Rule 403.

401 F.3d at 1168 (citations omitted). In Morgan v. Marmaduke, the United States Court of Appeal

-17-

for the Eighth Circuit stated, when failing to see the probative value of a prior incident, that

> one could hardly infer, from the testimony about the collision in Caraway, a motive, intent, or plan or mode of operation by [the officer] to cause a collision with Morgan. The only similarity between the Caraway incident and Morgan's collision is that both involved a motorcyclist and [the officer] driving a patrol car.

958 F.2d at 211.

## STANDARD OPERATING PROCEDURES IN CIVIL RIGHTS CASES

In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court examined the application of SOPs to traffic-stop cases as a method by which a court could determine if an officer made a pretextual stop.  See id. at 813-14.  In concluding that the Fourth Amendment's reasonableness requirement "allows certain actions to be taken in certain circumstances, whatever the subjective intent," the Supreme Court stated:

> Indeed, it seems to us somewhat easier to figure out the intent of an individual officer than to plumb the collective consciousness of law enforcement in order to determine whether a "reasonable officer"  would have moved to act upon a traffic violation.  While police manuals and standard procedures may sometimes provide objective assistance, ordinarily one would be reduced to speculating about the hypothetical reaction of a hypothetical constable – an exercise  that might be called virtual subjectivity.
>
> Moreover, police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and time to time.  We cannot accept that the search and seizure protections of the Fourth Amendment are so variable and can be turned upon trivialities.

517 U.S. at 815 (citations omitted).  See United States v. Botero-Ospina, 71 F.3d 783, 787-88 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1999).

The Supreme Court has stated that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provisions." Davis v. Scherer, 468 U.S. 183, 194 (1984)(footnote omitted).  Consistent with other circuit courts, the Tenth Circuit holds that the violation of state law and SOPs will not turn an

otherwise constitutional use of force into a violation of § 1983.  See Tanberg v. Sholtis, 401 F.3d at 1167 ("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo."); Medina v. Cram, 252 F.3d at 1133 (excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices" because "claims based on violations of state law and police procedure are not actionable under § 1983."); Wilson v. Meeks, 52 F.3d at 1554 ("[V]iolation of a police department regulation is insufficient for liability under section 1983."); Romero v. Bd. of County Comr's of County Lake, 60 F.3d 702, 704 (10th Cir. 1995)("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.")(citations omitted), cert. denied, 516 U.S. 1073 (1996).  See Greenridge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991)(upholding the trial court's decision to exclude officer's failure to follow standard arrest procedures because it was not relevant to whether the officer acted reasonably in using force); Diaz v. Salazar, 924 F. Supp. at 1097 ("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983."); Marquez v. Scott, No. CIV 01-0445 WWD/LFG, Memorandum Opinion and Order at 2 (D.N.M., filed September 24, 2002)(Doc. 148)("The fact that Lehocky's conduct may not have conformed with police regulations or operating procedures does not operate to create constitutional liability under Section 1983.").

The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training.  The clearly established law requires the exclusion of any evidence regarding the violation of SOPs and training, because such evidence is irrelevant to Fourth-Amendment inquiry.  In Tanberg v. Sholtis, the Tenth Circuit discussed the propriety of admitting SOPs as evidence of a constitutional violation in an excessive-force, and an assault and battery, case.  The Tenth Circuit held that the proffered SOP was irrelevant

to the issues in the case:

> In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." Whren v. United States, 517 U.S. 806, 815 (1996). That logic would seem to apply equally to damage suits under § 1983. This Court has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force. Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005); Medina[ v. Cram], 252 F.3d at 1133; Romero v. B[]ld[.] of County Com[m]'rs of County of lake, State of Colo., 60 F.3d 702, 705 (10th Cir. 1995); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995). . . . That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefor irrelevant. If Officer Sholtis violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiff's arrest violated the reasonableness requirement of the Fourth Amendment.

Tanberg v. Sholtis, 401 F.3d at 1163-64. As the Tenth Circuit explained:

> Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties. Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima. If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards. Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

401 F.3d at 1164.

In Medina v. Cram, the Tenth Circuit reviewed the relevance of SOPs to a Fourth-Amendment excessive-force claim. The police responded to a call regarding Medina's refusal to return to jail on a bail-bond violation and statement that he was armed with a gun. See 252 F.3d at 1126. After their arrival, the police tried to convince Medina to leave his house peacefully. See id. Instead, Medina told the officers that he needed more time, was suicidal, and was armed with a

handgun.  See id.  Ultimately, Medina "emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which Mr. Medina intended as a representation of a weapon."  Id.  Although ordered to stop, Medina "walked" toward and onto the street.  Id.  The officers' use of bean-bag rounds did not stop Medina's movement.  See id.  After the bean-bag rounds failed to stop Medina, "an officer released an attack dog, which bit [Medina] and released, returning to the officer."  Id.  The "attack dog was released a second time," causing Medina to drop to the ground and expose the staple gun.  Id.  As he dropped to the ground, Medina pointed the staple gun in the direction of other officers.  See id.  Two officers shot Medina five times.  See id.

In response to the officers' assertion of qualified immunity, Medina submitted an affidavit of an expert who opined that the officers' use of force did not conform with accepted police guidelines and practices, and was therefore excessive.  See id. at 1133.  The Tenth Circuit was not persuaded by the expert's affidavit:

> We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983.  Romero [v. Bd of County Comm'rs], 60 F.3d at 705 (state law and police procedure); Wilson [v. Meeks], 52 F.3d at 1554 (police department regulation); see also Davis v. Scherer, 468 U.S. 183, 194-96 (1984)(rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation).

Medina v. Cram, 252 F.3d at 1133.

In the various cases in which the Court in the District of New Mexico addressed this issue, most, and all recent, cases have ruled that evidence regarding the violation of police procedure is not admissible in a § 1983 excessive force case.  See Chamberlain v. City of Albuquerque, 2005 U.S. Dist. LEXIS 21910, at *1-2 (Browning, J.)("[U]nder United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs is irrelevant to whether [defendant officer] acted objectively

reasonably.  Accordingly, the Court will preclude [plaintiff] from offering testimony or evidence about SOPs on his § 1983 claim."); Realivasquez v. City of Albuquerque, No. CIV 03-0015 MCA/KBM, Memorandum Opinion and Order at 4-5 ("[T]he Court concludes that the parties may not use evidence of standard operating procedures in order to supplant the test of objective reasonableness that has been defined by the Supreme Court and the Tenth Circuit."); Tanberg v. Sholtis, No. CIV 02-0348 LCS/LFG, Memorandum Opinion and Order at 6-8 (D.N.M., filed June 6, 2003) (Doc. 146)(holding that "evidence of the standard operating procedures and any violation thereof is not relevant to the excessive force claim"); Smith v. Stover, No. CIV 95-1471 JP/WWD, Memorandum Opinion and Order at 3-5 (D.N.M., filed December 9, 1997)(Doc. 127); Kampa v. City of Albuquerque, No. CIV 96-1572 LFG/DJS, Memorandum Opinion and Order at 4 (Doc. 138)("[T]he violation of police procedure in and of itself is not constitutionally significant.").

In Taylor v. Hudson, 2003 U.S. Dist. LEXIS 26736, at *16, which was decided before the Tenth Circuit's decisions in Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005), the Court opined:  "The use of SOP evidence with respect to the reasonableness of the amount of force actually used in effecting the arrest implicates the rule of law that a violation of police procedures cannot serve as the basis for a constitutional violation."  Taylor v. Hudson, 2003 U.S. Dist. LEXIS 26736, at *16.  In Chamberlain v. City of Albuquerque, the primary issue was whether the Court should allow the plaintiff, Chamberlain, to introduce the Albuquerque Police Department's SOPs. See 2005 U.S. Dist. LEXIS 21910, at *1-2.  Because of two recent Tenth Circuit decisions, the Court granted Lehocky's motion.  The Court, after reviewing the two recent decisions pertaining to SOP admissibility that the Tenth Circuit decided after the Court's decision in Taylor v. Hudson -- Tanberg v. Sholtis and Marquez v. City of Albuquerque -- excluded any evidence or testimony pertaining to SOPs.  The Court stated that, in light of these recent Tenth Circuit decisions, and in

light of those holdings, it would not allow the plaintiff to offer evidence or testimony of the Albuquerque Police Department's SOPs.  In light of the recent Tenth Circuit precedent, the Court, contrary to its decision in Taylor v. Hudson, held that the plaintiff could not introduce the Albuquerque Police Department's SOPs to support the allegation that Lehocky acted unreasonably in directing his police service dog to attack the plaintiff in violation of his Fourth-Amendment rights.  See 2005 U.S. Dist. LEXIS 21910, at *2.  Specifically, the Court would not allow the plaintiff to introduce SOPs that he had provided to the Court on Use of Force, Use of Canines, Response to the Mentally Ill/Suspected Mentally Ill, and Rights of Onlookers.  See id.

The Court in Chamberlain v. City of Albuquerque acknowledged that, although both of the Tenth Circuit decisions were distinguishable from the facts in Chamberlain v. City of Albuquerque in that the SOPs which the plaintiff sought to introduce in Chamberlain v. City of Albuquerque were different than those at issue in the two Tenth Circuit cases, and that, unlike Tanberg v. Sholtis, there was no suggestion that the plaintiff in Chamberlain v. City of Albuquerque also sought to introduce testimony whether the police department disciplined Lehocky for violating any SOP, the Tenth Circuit cases' language was sufficiently broad and sweeping to encompass the SOPs at issue in Chamberlain v. City of Albuquerque.  The Court stated that, under United States v. Marquez and Tanberg v. Sholtis, evidence of the SOPs was irrelevant to whether Lehocky acted objectively reasonably.  Accordingly, the Court precluded the plaintiff from offering testimony or evidence about the SOPs on his § 1983 claim.

## STANDARD OPERATING PROCEDURES WITH STATE-LAW CLAIMS

The clearly established law requires the exclusion of any evidence regarding the violation of standard operating procedures and training because such evidence is irrelevant to the state-law inquiry.  Understandably, a juror may confuse the difference between a constitutional-right violation

or state-law tort claim, and a violation of department standard operating policy, or police training, or both.  See Tanberg v. Sholtis, No. CIV 02-0348 LCS/LFG, Order on Motions in Limine at 6-8; Marquez v. Scott, No. CIV 01-0445 WWD/LFG, Memorandum Opinion and Order at 3. Accordingly, the federal courts have kept evidence of SOPs out when the federal and state-law claims are brought together in federal court.

In Tanberg v. Sholtis, the Honorable Leslie Smith, United States Magistrate Judge, acknowledged that the SOPs may be relevant to whether the defendant committed assault and battery, but nevertheless excluded the SOPs on the grounds that, under rule 403, such admission would likely lead to jury confusion.   Magistrate Judge Smith stated that, "even if relevant to Plaintiffs' state law claims, it is apparent that the information as to the standard operating procedures and any violation thereof may be highly confusing to the jury."  Tanberg v. Sholtis, No. CIV 02-0348 LCS/LFG, Order on Motions in Limine at 8.  On appeal, the Tenth Circuit also addressed SOPs' admissibility when, in addition to a § 1983 excessive-force claim, the plaintiff brings a state-law assault-and-battery claim.  401 F.3d at 1164.  The Tenth Circuit affirmed, holding that, "[g]iven . . . the likelihood that the jury could confuse legal and administrative standards," the trial court did not "abuse[] its discretion in excluding the evidence with regard to Plaintiffs' state claims."  Id. Finally, in Chamberlain v. City of Albuquerque, the Court concluded that, under Tanberg v. Sholtis, even if the SOPs were relevant to the plaintiff's battery claim, it would nevertheless exclude the SOPs under rule 403 to avoid jury confusion.  See 2005 U.S. Dist. LEXIS 21910, at *12.

## LAW REGARDING UNCONSTITUTIONAL POLICIES, CUSTOM, AND PRACTICE

Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).

> Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

Monell v. Dep't of Soc. Servs., 436 U.S. at 691.  "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled  as to constitute a 'custom or usage' with the force of law."  Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68 (1970).

Naturally, the governing body cannot be held liable for an unconstitutional policy or practice "if the jury finds that the municipal employee committed no constitutional violation."  Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998).  See Evans v. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996)(finding that, absent constitutional violation by officer, city cannot be held liable); Scott v. Clay County, Tenn., 205 F.3d 867, 879 (6th Cir. 2000)(holding that conclusion no officer-defendant deprived plaintiff of any constitutional right a fortiori defeats claim against county), cert. denied, 531 U.S. 874 (2000); Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 596-97 (7th Cir. 1997)(determining that officers did not violate constitution in seizing plaintiff's decedent mandated conclusion that neither city nor police chief could be held liable); Kiser v. City of Huron, 219 F.3d 814, 816 (8th Cir. 2000)(plaintiff must first establish that officers' actions are unlawful before municipality can be held liable); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996)(holding that, because officers did not violate plaintiff's rights, it follows that claim against city under theory of inadequate custom or municipal custom lacks merit);

Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996)(holding public entity not liable

under § 1983 for policy "that can cause constitutional deprivations when the factfinder concludes

that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the

plaintiff); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994)(holding that, although liability of

municipalities does not turn on liability of individual officers, "it is contingent on a violation of

constitutional rights"; where no constitutional violation occurred, municipality could not be held

liable).

### NEW MEXICO LAW REGARDING LEAST INTRUSIVE ALTERNATIVES

State battery law requires only that the defendant officer choose a "reasonable" method to

end the threat the plaintiff posed to the defendant officer, regardless of the availability of less

intrusive alternatives. To avoid a "Monday morning quarterback" approach, state law does not

require the defendant officer to use the least-, or even a less-, forceful or intrusive alternative,

necessary to effect custody so long as the force used is reasonable under state tort law.

When examining a battery claim against a police officer, the Supreme Court of New Mexico

stated:

> [The officer is] entitled to use such force as was reasonably necessary under all the
> circumstances of the case. Officers, within reasonable limits, are judges of the force
> necessary to enable them to make arrests or to preserve the peace. When acting in
> good faith, the courts will afford them the utmost protection, and they will recognize
> the fact that emergencies arise when the officer cannot be expected to exercise that
> cool and deliberate judgment which courts and juries exercise afterwards upon
> investigations in court.

Mead v. O'Connor, 66 N.M. at 173, 344 P.2d at 481.  In a force case, the Supreme Court of New

Mexico further stated:

> That the officers might have placed themselves differently, or formulated a plan that
> would have been more certain of success without the use of firearms, are matters of
> retrospect which are thought of by judges and lawyers after the occurrence; but in the

day-by-day work of an officer, it can hardly be expected that every arrest or attempted arrest can be effected with theoretical perfection. The unexpected must always be considered, particularly when dealing with those who have committed a felony.

Alaniz v. Funk, 69 N.M. at 168, 364 P.2d at 1035-36.

## ANALYSIS

The Defendants, by their motion, seek to exclude several categories of evidence from the case: (i) Daniels' and Hoolan's prior and subsequent, unrelated incidents of excessive use of force; (ii) police SOPs; (iii) police training; and (iv) less-intrusive means that the deputies might have used. Jonas only opposes the motion insofar as it asks the Court to exclude evidence of SOPs that are unrelated to excessive use of force. Thus, the Court grants the motion by consent as to all other forms of evidence that the Defendants seek to exclude.

Regarding non-excessive-force SOPs, Jonas has not told the Court what relevance this evidence has. The Court, however, can envision little use for these SOPs other than to set up a standard of conduct to argue that the Defendants failed to live up to that standard. The Tenth Circuit has dictated that a party cannot use SOP evidence for the purpose of convincing a jury that the SOPs set forth a standard of reasonableness and that, therefore, violation of the SOPs constitutes evidence of a violation of the Fourth Amendment. See Tanberg v. Sholtis, 401 F.3d at 1162 ("To the extent that the first half of the SOP requires an assessment of an officer's choice between various techniques for de-escalation, it is beyond the scope of the inquiry mandated by state and federal law, which require that an officer use reasonable, not optimal, force."); Romero v. Bd. of County Commr's of County Lake, 60 F.3d at 705 (stating that an officer's "failure to arrest and handcuff Romero does not become relevant [to the § 1983 inquiry] simply because such actions may be required by state law and police procedure.")(citations omitted). See also Greenridge v. Ruffin, 927

-27-

F.2d at 792 (holding officer's failure to follow standard arrest procedures is not relevant to whether the officer acted reasonably in using force); <u>Diaz v. Salazar</u>, 924 F. Supp. at 1097 (police shooting case)("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983."); <u>Marquez v. Scott</u>, Memorandum Opinion and Order at 2 (Doc. 149)("The fact that Scott's conduct may not have conformed with police regulations or operating procedures does not operate to create constitutional liability under Section 1983.").   The SOPs Jonas seeks to admit in this case, however, are different in kind from those that have been excluded in other cases.  Rather than setting forth the situations in which a deputy may or may not use force or execute an arrest, the passages selected by Jonas appear to reflect only general ideals and principles.

Nevertheless, the Court notes that the Tenth Circuit painted with a broad brush in <u>Tanberg v. Sholtis</u>.  <u>See</u> 401 F.3d at 1163 ("[T]he Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct.")(citing <u>Whren v. United States</u>, 517 U.S. at 815).[3]  While it does not appear that the Tenth Circuit has definitively eliminated the possibility of all SOP evidence from ever being introduced, it nonetheless created a burden on the party seeking to admit the SOPs to find a basis of relevance that has not been expressly foreclosed.  First, the Tenth Circuit stated that SOPs proffered for no reason other than to set forth a standard of conduct that is more rigorous than the requirements of the Fourth Amendment are irrelevant in Fourth-Amendment cases.  <u>See</u> <u>Tanberg v. Sholtis</u>, 401 F.3d at 1162 ("To the extent that the first half of the SOP requires an assessment of an officer's choice between various

_____

[3] Judge McConnell may have painted with a broader brush than the Supreme Court intended in <u>Whren v. United States</u>.  In that case, the Supreme Court pointed out that "police manuals and standard procedures may sometimes provide objective assistance" in the Fourth-Amendment inquiry.  <u>See</u> <u>Whren v. United States</u>, 517 U.S. at 815.

-28-

techniques for de-escalation, it is beyond the scope of the inquiry mandated by state and federal law, which require that an officer use reasonable, not optimal, force."). Second, the Tenth Circuit stated that SOPs that merely duplicate the standards of state or federal law are irrelevant to the Fourth-Amendment inquiry. See Tanberg v. Sholtis, 401 F.3d at 1163 ("That the SOP required precisely what the law required of him does not make it more or less likely that Officer Sholtis's use of force was reasonable; the SOP is therefore not relevant."). Third, where there exist additional state-law claims, to which the SOP evidence might be relevant, SOPs can properly be excluded under rule 403 because the risk of jury confusion might substantially outweigh their probative value. See id. at 1164 ("Given the minimal probative value of an SOP that merely duplicates the legal standard already under consideration, and the likelihood that the jury could confuse legal and administrative standards, we cannot find that the trial court abused its discretion in excluding the evidence with regard to Plaintiffs' state claims."). Finally, it would seem to follow that SOPs which provide standards less rigorous than objective reasonability would not be relevant to the Fourth-Amendment analysis. Thus, unless the proffering party can provide a unique basis of relevance, which does not fit into one of the four excluded categories, the Tenth Circuit has implied that such SOP evidence is properly excluded.

In this case, the proffered SOPs are largely standards that merely restate federal and New Mexico law. See Manual of Operating Procedures: Luna County Sheriff's Department (marked Exhibit 21). The law already requires that deputies shall: (i) see that the laws be enforced; (ii) know their jurisdiction and the jurisdiction of other law-enforcement and judicial bodies; (iii) be familiar with criminal law and procedures; and (iv) obey the laws. While the Tenth Circuit in Tanberg v. Sholtis was dealing with SOPs that duplicated use-of-force law, the duplication principle seems applicable to any SOP. The SOPs relating to these duplicative requirements are thus irrelevant, and

the Court will grant the Defendants' motion as to them.  Jonas is free to ask Daniels and Hoolan about their understanding of the law, but the SOPs will not help the jury resolve the issues in this case.

The SOPs that are not duplicative of the law are the Mission Statement and paragraph R, which states that the officers shall be familiar with, and be able to prepare, various reports and other documents.  The Mission Statement is sufficiently vague that the jury is unlikely to construe it as setting forth an inconsistent or duplicative standard of conduct.  On the other hand, it is so vague that it will be of little help to the jury and is no more specific than the Boy Scout slogan, "Do a good turn daily."   Boy Scout Oath, Law and Motto, http://www.usscouts.org/advance/boyscout/ bsoathlaw.asp (last visited Mar. 10, 2010).  Thus, it lacks relevance.  The Court will thus grant the motion as to the Mission Statement.

Paragraph R is more substantive, requiring that the officers involved will be familiar with, and know how to generate, various reports and other documents.  The Court nevertheless finds that the probative value of this evidence is minimal.  First, Jonas will be able to gather most of the same facts by examining the officers during the trial.  Jonas' point is that police should be accurate and complete, and the police officers will probably readily agree to that principle.  That admission will be more specific than paragraph R, which only states that deputies will be familiar with how to prepare criminal complaints without standing how they should be prepared.  Furthermore, whether the officers know how to generate various documents has, it seems, no probative value with respect to whether they battered, assaulted, falsely imprisoned, unlawfully seized, or used excessive force against Jonas.  The attack on the police reports primarily goes to credibility.  On the other hand, while paragraph R has minimal probative value, there is some danger of unfair prejudice. Establishing that Daniels and Hoolan should know how to create certain reports or documents, then

establishing that they do not, might lead a juror to surmise that they are shoddy deputies and thus are more likely to have used force in an unreasonable manner.  Because the officers' general competence is not directly relevant to the claims that Jonas asserts, the Court is concerned that evidence which might persuade the jury that the deputies are not good at their job might cause the jurors to base their decision on something other than the evidence of liability.  The Court will therefore grant the Defendants' motion with respect to paragraph R of the proposed SOPs.[4]

**IT IS ORDERED** that the County Defendants' Motion in Limine No. I: the Exclusion of Evidence at Trial Regarding Defendant Deputies' Use of Force in Prior and Subsequent, Unrelated Incidents, Police Standard Operating Procedures, Training and Less Intrusive Alternatives is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael E. Mozes
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Erika E. Anderson
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants*

---

[4] The existence of state-law claims does not change the Court's conclusion.  See Tanberg v. Sholtis, 401 F.3d at 1164; Chamberlin v. City of Albuquerque, 2005 U.S. Dist. LEXIS 21910, at *12 (Browning, J.)("Thus, this Court concludes that, under Tanberg v. Sholtis, even if relevant to Chamberlin's battery claim, it will nevertheless exclude the SOPs under rule 403 to avoid jury confusion.").